IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| KELLY JAMES CLARK, JR., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 3:20-cv-00017 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| GLENN TOMMY PAYNE, *et al.*, | ) By:   Hon. Thomas T. Cullen |
| | )         United States District Judge |
| Defendants. | ) |

This long-running matter stems from a series of events in December 2016 after Plaintiff Kelly James Clark, Jr., crashed his car in Louisa County, Virginia. The responding officer to the crash, Deputy Glenn Tommy Payne, shot Clark after Clark threatened to kill Payne and tried to take his service weapon. Afterwards, Clark was hospitalized at the University of Virginia Medical Center ("UVA") under the custody of the Central Virginia Regional Jail ("CVRJ"). While at the hospital, Clark alleges that Defendants Correctional Officers Kevin Carl and Colby Lee Miller ("Defendants") assaulted and seriously injured him. Clark later sued Payne and Defendants under 42 U.S.C. § 1983 for excessive force, in violation of the Fourth and Fourteenth Amendments. In March 2021, the court granted Payne, Carl, and Miller's motion for summary judgment and denied Clark's motion to amend his complaint. On appeal, the Fourth Circuit affirmed the court's summary-judgment decision as to Payne but vacated it as to Carl and Miller. *Clark v. Payne*, No. 21-6634, 2023 WL 4888837 (4th Cir. Aug. 1, 2023).

Following remand, the matter is before the court on Defendants' renewed motion for summary judgment. In their motion, Defendants argue that the court can still rule in their favor and should not allow Clark to amend his complaint at this stage. Clark opposes that

motion and asserts there are genuine issues of material fact that a jury must resolve. Having reviewed the pleadings, briefs, and record, the motion is ripe for decision.[1] For the reasons discussed below, the court will deny Defendants' motion for summary judgment and grant Clark leave to amend his complaint to conform it to his deposition testimony.

## I. BACKGROUND

Despite the considerable record in this case, Clark's remaining claims are limited and only relate to when he was in CVRJ custody at the hospital. Accordingly, this section reviews the relevant evidence from Clark's hospitalization, his allegations against Defendants, and the procedural history related to those allegations. It does not recapitulate Clark's encounter with Payne.[2]

### A. Evidence from Hospitalization

Payne shot Clark during the early morning of December 26, 2016. Approximately two hours after the shooting, Clark was admitted into the UVA hospital and underwent surgery for his gunshot wound. (Medical Rs. at 5 [ECF No. 132-6].) Two days later, on December 28, Clark had another surgery for a collapsed lung that resulted from "a large mucous plug totally occluding the right mainstem bronchus." (*Id.* at 7.) While recovering from his surgeries at UVA, Clark was in the custody of CVRJ and guarded by two officers at a time in 12-hour shifts. The officers logged detailed, and purportedly contemporaneous, accounts of Clark's activities. (*See generally* Log Entries [ECF No. 132-7].)

---

[1] The court dispenses with oral argument because it would not aid in the decisional process.

[2] The court's 2021 Memorandum Opinion (Mem. Op., Mar. 24, 2021 [ECF No. 112] [hereinafter 2021 Mem. Op.]) provides a detailed summary of the incident between Clark and Payne.

Defendants guarded Clark during the morning of December 30, and their log entries reflect an eventful shift. (*Id.* at 10–14, 29.) Around 10:30 a.m., after speaking with a CVRJ officer and nurse, Defendants moved Clark to a different room. (*Id.* at 12.) Clark also "did a walk with physical therapy." (*Id.*) And shortly before noon, Defendants restrained Clark after he attempted to leave his room. (*Id.*) Clark's medical records describe that incident as follows:[3]

> [Patient] agitated and attempted escape from the room. [Patient] states he doesn't feel safe and pulled out his IV and chest tube. [Patient] refusing care at this time. [Patient] is verbally aggressive and agitated. Charge nurse was notified of situation.

(Medical Rs. at 12.) Defendants' body-camera footage also depicts the incident. (*See* ECF No. 132-10.)

That afternoon, Defendants restrained Clark again. As a nurse recounted in Clark's medical records:

> I was called to the room because the patient was agitated and disconnected his Chest Tube and pulled out his IV. He attempted to leave but was held back by [Defendants]. Handcuffs were applied in addition to the shackles. The patient was agitated but easily re-directed.

(Medical Rs. at 11.) Defendants submitted body-camera footage of this second incident as well. (*See* ECF No. 132-12.) In that footage, a nurse says that Clark's chest tube "didn't come dislodged like the last time." (*Id.* at 3:38.)

The final medical note from December 30, 2016, entered at 5:42 p.m., states:

---

[3] The discharge summary states that the incidents captured on Defendants' body-camera footage occurred on December 29. (*See* Medical Rs. at 3.) But that appears to be a typographical error because the detailed and chronologically ordered notes in Clark's medical records and Defendants' body-camera footage reflect that both incidents occurred on December 30. (*Id.* at 11–12; ECF Nos. 132-10, -12.) Clark does not dispute that these two events occurred on December 30. (*See generally* Br. Opp'n Summ. J. [ECF No. 142].)

> Following an aggressive incident towards law enforcement, law enforcement was given an order from the Warden to place locked restraints on the [patient]. Charge nurse contacted the nursing supervisor, Michelle Miller, RN[,] who consulted with risk management. Security provided the locked restraints to be managed by law [enforcement]. Law enforcement placed the bilateral ankle and bilateral wrist locked restraints on the [patient] at [5:40 p.m.].

(Medical Rs. at 11.) The medical records, officers' log entries, and body-camera footage do not reflect any other incidents between Clark and Defendants on December 30. They also do not reflect—as Clark contends—that Clark underwent surgery that day. Defendants' shift ended around 6:00 p.m. that evening, and they did not guard Clark again during his stay at UVA. (*See* Log Entries at 14–20.)

**B.     Allegations Against Defendants**

Approximately two years after his hospitalization, Clark sued Defendants for using excessive force against him while he was in custody, in violation of the Fourteenth Amendment. (Second Am. Compl. ¶¶ 1, 21 [ECF No. 39].) Specifically, Clark's complaint states:

> On December 28, 2016, while Plaintiff was still being hospitalized in the intensive care unit of [UVA] in the care and custody of the [CVRJ] and guarded by Officers Colby Miller and Kevin Carl, and while Plaintiff was heavily sedated having just undergone multiple surgeries and blood transfusions, Officers Colby Miller and Kevin Carl tackled the Plaintiff, alleging that he was attempting to leave the room while Plaintiff was handcuffed to the bed, with enough force to cause his lung to collapse, again, and require additional immediate surgery.

(*Id.* ¶ 15.)

As described above, Clark's medical records reflect that he underwent surgery for a collapsed lung on December 28. (Medical Rs. at 7–9.) But Defendants could not have caused

- 4 -

Clark's collapsed lung on December 28 because they did not guard Clark until December 30. (*See generally* Log Entries.)

Confronted with that discrepancy at his deposition, Clark wavered about the date of the alleged incident with Defendants. In one exchange, Clark said that the incident occurred on December 28 (Clark Dep. 51:3–7 [ECF No. 122-2]), then indicated it occurred on December 30 (*id.* 59:2–14), but then flipped back to December 28 (*id.* 61:14–23). Viewed in its totality—and in the light most favorable to him—Clark's deposition transcript reveals that he could not recall the exact date of Defendants' purported assault. But he maintained that it occurred during the morning of Defendants' shift and on the same day as the two other hospital incidents captured on their body cameras. (*See id.* 53:13–59:14, 67:4–21, 157:6–160:14.)

According to Clark, he cannot remember the exact date of the incident because he did not know what day he came to consciousness at UVA and was not completely sober (due to pain medications) during his time at the hospital. (*Id.* 154:12–155:24.) Given this incomplete memory, he relied on information from his UVA medical records when setting forth the allegations against Defendants in his complaint. (*See id.* 64:2–66:18, 156:10–157:5.) Clark also conceded in his March 2021 brief opposing summary judgment that discovery revealed his complaint included a "genuine mistake of fact" because the alleged incident with Defendants occurred on December 30, not December 28. (ECF No. 99 at 3.) Accordingly, Clark sought

leave to amend his complaint "to address the mistaken date and move forward with his claim on the merits."[4] (*Id.*)

Clark's recollection of what Defendants purportedly did to him during the alleged off-camera incident also differs from the details set forth in his complaint. During his deposition, he described Defendants' alleged assault as follows:

> [Defendants] got me up. They got me up. I was so weak, I couldn't get out the bed my own self. They got me up and said come on. We're going to take you for a walk. . . . So I got everything hooked up to me. They help me get out the bed. I get up, walk. They walk with me. I'm walking with a walker. . . . I remember walking past the nurse's station. And then they walked me into a room. And when they walked me into that room, that's when that happened. . . . When the tube came out, blood shot everywhere. Doctors, they had to come in that room immediately and go to work on me. I got a scar on my back over 15 inches long. . . . They had to go into surgery, because I lost so much blood. . . . They had to do a transfusion right then and there from what [Defendants] did to me.

(Clark Dep. 49:19–50:14.) Clark went on to state that, when they arrived in the new room, he asked Defendants why they were there and called for help when he did not receive a response. (*Id.* 56:13–17.) Defendants then purportedly tackled Clark "[a]nd just everything came out. And blood went everywhere." (*Id.* 56:18–19.) As to their motive for a seemingly unprovoked assault, Clark speculated that Defendants wanted to teach him a lesson for expressing concerns about his safety to UVA nurses the previous night. (*See id.* 55:20–56:4.)

One item that Clark has been consistent about throughout this proceeding is that his claims against Defendants are not based on either of the events recorded on their body

---

[4] Clark did not file a separate motion to amend his complaint; nevertheless, the court previously construed this request as a motion for leave to amend and continues to do so.

cameras from December 30; they are based on a separate incident that is *not* depicted on Defendants' body cameras. (*See, e.g.*, *id.* 58:19–59:9; Hr'g Tr., Feb. 25, 2021, 29:14–30:1 [ECF No. 121] [hereinafter 2021 Hr'g Tr.]; ECF No. 99 at 4; Appellant's Br., July 30, 2021, at 30 [4th Cir., No. 21-6634, ECF No. 19].)

**C.     Procedural History**

In March 2021, the court granted summary judgment for Defendants, finding that Clark did not provide "a single piece of . . . objective evidence corroborating [the] story" from his deposition and that "other evidence in the record demonstrates" that the alleged incident with Defendants never occurred. (2021 Mem. Op. at 23.) For the same reason, the court also denied as futile Clark's motion to amend his complaint to align it with his deposition testimony. (*Id.* at 23–24.) Clark appealed the court's grant of summary judgment but did not explicitly appeal its denial of his motion to amend. *See Clark*, 2023 WL 4888837, at *1, *1 n.*. The Fourth Circuit subsequently vacated the court's summary-judgment ruling for Defendants and remanded the case, finding that Clark's deposition testimony created a genuine issue of material fact about the purported off-camera incident. *See id.* at *1–2. After the mandate issued, Defendants moved for summary judgment again in October 2023 (Mot. Summ. J. [ECF No. 131]), which Clark opposes (*see generally* Br. Opp'n Summ. J.).

## II.     RELEVANT LEGAL STANDARDS

**A. Summary Judgment**

Under Rule 56(a), the court can only "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn*

*v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court considers "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). It may not rely on beliefs, conjecture, speculation,

or conclusory allegations to defeat a motion for summary judgment. *See Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). Nevertheless, as the Fourth Circuit noted in the instant matter, a party's sworn statements about his own personal accounts are sufficient to create a genuine issue of material fact even without other corroborating evidence. *Clark*, 2023 WL 4888837, at *1 (citing *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991)). Overall, the court must be careful not to "abrogate the proper summary judgment analysis," which in this type of case "usually means adopting . . . the plaintiff's version of the facts." *Id.* at *1 (quoting *Harris v. Pittman*, 927 F.3d 266, 276 (4th Cir. 2019)).

**B.     Mandate Rule**

"Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is 'controlling as to matters within its compass.'" *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)). The mandate rule is a "specific application of the law of the case doctrine," and "in the absence of exceptional circumstances . . . compels compliance on remand with the dictates of a superior court." *Id.* Generally, this includes "foreclos[ing] litigation of issues decided by the district court but foregone on appeal or otherwise waived." *Id.*; *see S. Atl. Ltd. P'ship of Tenn., LP v. Riese*, 356 F.3d 576, 584 (4th Cir. 2004). The district court may, however, "possess some limited discretion to reopen [an] issue in very special situations." *Bell*, 5 F.3d at 67. "These circumstances are: (1) a showing that controlling legal authority has changed dramatically; (2) that significant new evidence . . . has come to light; or (3) that a blatant error in the prior decision will, if uncorrected, result in a serious injustice." *Id.* (cleaned up). At bottom, when ruling on a remanded case, the court must "implement both the letter and spirit" of the Fourth

Circuit's decision, "taking into account [its] opinion and the circumstances it embraces." *Id.* at 66 (cleaned up).

**C.     Amending the Complaint**

Under Federal Rule of Civil Procedure 15(a)(2), after the time has passed to amend a pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) further dictates that "[t]he court should freely give leave when justice so requires." *Id.* This includes allowing a party to amend its pleading when the party "seeks to simply conform its pleading to facts which were revealed during discovery." *Francisco v. Verizon S., Inc.*, 756 F. Supp. 2d 705, 717 (E.D. Va. 2010), *aff'd*, 442 F. App'x 752 (4th Cir. 2011) (cleaned up). "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

## III.     ANALYSIS

Despite the Fourth Circuit's remand, Defendants contend that summary judgment remains proper based on three related arguments. First, they argue that the court should not consider Clark's deposition testimony because it is inconsistent with his complaint. (*See* Br. Supp. Mot. Summ. J. at 2 [ECF No. 132].) Second, when excluding that testimony and only analyzing the current complaint, Defendants maintain that there is no genuine issue of material fact because they did not guard Clark on the date alleged in the complaint. (*See id.*) And third, they assert that the court cannot allow Clark to amend his complaint—to align his complaint

with his deposition testimony—because Clark did not appeal the court's denial of his previous motion to amend. (*Id.* at 3.) Opposing Defendants' motion, Clark argues that genuine disputes of fact remain that preclude summary judgment. (*See* Br. Opp'n Summ. J. at 16.)[5]

The court agrees with Clark. Defendants' arguments for summary judgment misconstrue the Fourth Circuit's opinion and applicable law. Accordingly, the court will deny Defendants' motion for summary judgment and permit Clark to amend his complaint.

## A. Clark's Deposition Testimony

Much of Defendants' motion for summary judgment rests on their contention that the court must ignore Clark's deposition testimony when determining if a genuine issue of material fact exists because, as the Fourth Circuit mentioned in dicta, Clark's testimony "differed in substantial respects from the allegations in [his] complaint." (*See* Br. Supp. Mot. Summ. J. at 9 (quoting *Clark*, 2023 WL 4888837, at *1).) Defendants point to Clark alleging in his complaint that their assault occurred on December 28, 2016, while stating in his deposition that he was unsure about the exact date of the incident but believed it occurred on December 30, 2016. (*Id.* at 11–12.) The date of the alleged incident is a material fact because if Clark is tied to his initial allegation that it occurred on December 28, the record evidence confirms Defendants were not on duty and could not have assaulted him. But Defendants *were* present and guarded Clark on December 30, so Clark's allegations are conceivable if his deposition testimony is considered.

---

[5] Citations to specific pages in Clark's response brief reflect the number of pages from the start of the brief, including the cover page, not the inconsistent page numbers in the brief's footer.

To support their argument, Defendants rely on cases where courts found no genuine issue of material fact based on a party's subsequent sworn statements conflicting with its previous sworn statements. (*See* Br. Supp. Mot. Summ. J. at 9–12.) The rule from those cases—often referred to as the "sham-affidavit" doctrine—provides that "a genuine issue of fact is not created where the only issue of fact is to determine which . . . versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (cleaned up). In practice, that doctrine means that "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999).

The purpose of the sham-affidavit doctrine is to safeguard "the utility of summary judgment as a procedure for screening out sham issues of fact." *Hannah v. United Parcel Serv., Inc.*, 72 F.4th 630, 638 (4th Cir. 2023) (quoting *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984)). Courts, however, "carefully limit application of the . . . rule to situations involving flat contradictions of material fact." *Tinoco v. Thesis Painting, Inc.*, No. GJH-16-752, 2018 WL 4599677, at *5 (D. Md. Sept. 24, 2018) (cleaned up). "[F]or the rule . . . to apply, there must be a bona fide inconsistency" between a party's sworn statements. *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 314 n.6 (4th Cir. 2013) (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 n.7 (4th Cir. 2001)). If a plaintiff's subsequent statements "do[] not contradict his prior statements but instead 'merely detail[] and lend[] context to' them," the subsequent statements are not disregarded. *Jessup v. Barnes Grp., Inc.*, 23 F.4th 360, 367 (4th Cir. 2022) (quoting

*Libertarian Party of Va.*, 718 F.3d at 314 n.6). Similarly, "minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding" subsequent statements. *Stevens v. Charles Cnty.*, No. 20-cv-3522, 2022 WL 2362283, at *6 (D. Md. June 30, 2022), *aff'd*, No. 22-1715, 2023 WL 2424067 (4th Cir. Mar. 9, 2023) (citation omitted).

The sham-affidavit doctrine is inapplicable in this case because Clark does not provide two *sworn* statements that are contradictory. Clark's deposition testimony is sworn; his operative complaint is not. Contrary to Defendants' contentions, therefore, the court must consider Clark's deposition testimony as evidence at summary judgment; the allegations in his complaint are not evidence at this stage and do not bind Clark. *See Riddick v. Kegley*, No. 7:20-cv-00562, 2023 WL 2326858, at *2 (W.D. Va. Mar. 2, 2023) (citing *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021)).

Even if Clark's complaint was verified and treated like an affidavit, *see Goodman*, 986 F.3d at 498, the court would still not disregard his deposition testimony based on its inconsistencies with the complaint. The primary discrepancy Defendants point to is the two-day date difference between when Clark alleges the incident with Defendants occurred in his complaint (December 28, 2016) and in his deposition testimony (December 30, 2016). (*See* Br. Supp. Summ. J. at 11–12.) This minor difference does not justify ignoring Clark's deposition testimony because the dates alleged in a party's statements must be materially different to constitute a bona fide inconsistency for purposes of the sham-affidavit doctrine. A four-week discrepancy in when a plaintiff alleged that an event occurred may constitute a bona fide inconsistency. *See Satterfield v. City of Chesapeake*, No. 2:16-cv-665, 2018 WL 9866493, at *11–

13 (E.D. Va. Oct. 1, 2018). But a discrepancy of only a couple of days does not. *See Daugherty v. Gangloff*, No. 3:19-cv-00419, 2022 WL 2340818, at *6 (S.D. Ill. June 29, 2022) ("[T]he one-day discrepancy in dates between Plaintiff's complaint and his deposition testimony does not make Plaintiff incredulous as a matter of law."); *cf. Binks v. US Tech Sols.*, No. 2:20-cv-4164, 2021 WL 2679697, at *3 (D.S.C. June 30, 2021) (allowing a case to proceed due to "reasonably related" allegations in an EEOC charge and complaint despite a 17-day discrepancy between when the filings allege the discriminatory conduct occurred). Moreover, Clark's deposition testimony should not be ignored based on the date difference because—as Clark concedes—the difference was due to a genuine mistake of fact that was revealed during discovery. *See Stevens*, 2022 WL 2362283, at *6.

The discrepancies between Clark's complaint and deposition about what Defendants allegedly did to him also do not support overlooking his deposition testimony. The complaint states that Defendants tackled Clark while he was handcuffed to his bed, resulting in a collapsed lung. (Second Am. Compl. ¶ 15.) Clark testified during his deposition, however, that Defendants tackled him after walking him to a hospital room, resulting in his medical tubes dislodging and him losing significant blood. (Clark Dep. 49:19–50:14, 56:16–20.) Although Clark's complaint and deposition include different details, they do not flatly contradict each other as they both broadly assert that he was significantly injured from Defendants tackling him while on duty. *Contra Zimmerman v. Novartis Pharms. Corp.*, 287 F.R.D. 357, 362 (D. Md. 2012) (disregarding an expert's affidavit that claimed a root canal would have been preferable to a tooth extraction because it flatly contradicted the expert's previous testimony that extraction was the only option).

The court also considers the deposition testimony because Clark provides a sufficient explanation for its inconsistencies with his complaint. *See Cleveland*, 526 U.S. at 806–07; *June v. Thomasson*, No. 14-cv-2450, 2016 WL 7374432, at *6 (D. Md. Dec. 20, 2016) ("After thoroughly reviewing case law, the Court concludes that in the Fourth Circuit, the rule remains that an affidavit is not sham if the party presenting it explains the contradiction or attempts to resolve the disparity.") (cleaned up). As Clark explained, discrepancies between his complaint and deposition testimony are because he did not know the date when he became conscious at UVA and was not completely lucid while at the hospital due to his traumatic injuries and pain medication. (*See* Clark Dep. 154:12–155:24.) Because of these factors, he relied on details from his UVA medical records when constructing his complaint. (*See id.* 64:2–66:18, 156:10–157:5.) This caused him to presume—as it turns out, incorrectly—that the surgery noted in his medical records on December 28 resulted from Defendants attacking him on that date. (*See id.*) This explanation is sufficient for the court not to consider Clark's deposition testimony a sham. *See June*, 2016 WL 7374432, at *6–7.

For all these reasons, the court considers Clark's deposition testimony as relevant and admissible evidence in opposition to Defendants' motion for summary judgment.

**B.    Genuine Dispute of Material Fact**

Considering Clark's deposition testimony and the other evidence in the record, Defendants' motion for summary judgment must be denied because Clark has established that there is a genuine issue of material fact related to his claims. As described above, Clark testified under oath that Defendants assaulted him at the UVA hospital during the morning of December 30, 2016. (*See* Clark Dep. 53:13–14, 59:2–14.) And it is undisputed that Defendants

guarded Clark on that date. (*See* Miller Aff. ¶ 3 [ECF No. 132-8]; Carl Aff. ¶ 3 [ECF No. 132-9].) Therefore, based solely on Clark's deposition testimony (as the Fourth Circuit held), there is a genuine issue of material fact about whether Defendants used excessive force against Clark in violation of the Fourteenth Amendment. *See Clark*, 2023 WL 4888837, at *1.

Upon a closer examination of the record, there is additional evidence that, when viewed in the light most favorable to Clark, supports his deposition testimony. Defendants' log entries from UVA note that Clark moved rooms with Defendants and did a physical-therapy walk during the morning of December 30. (Log Entries at 12.) These notes corroborate Clark's deposition testimony that he changed rooms and walked through the hospital halls with Defendants while they guarded him. Additionally, a nurse who evaluated Clark following his afternoon incident with Defendants on December 30 said that Clark's chest tube "didn't come dislodged like the last time." (ECF No. 132-12 at 3:38.) That statement, when viewed in Clark's favor, supports his testimony that his medical tubes became dislodged and UVA staff had to provide him medical care after Defendants purportedly assaulted him earlier that day. (*See, e.g.*, Clark Dep. 49:19–50:14.) The nurse's statement, of course, could reference Clark supposedly pulling his own chest tube out that morning—as noted in his medical records (Medical Rs. at 12)—or something else entirely, but that is a factual determination for a jury. Although this other evidence is not necessary for Clark's claims to survive, *see Clark*, 2023 WL 4888837, at *1, it further supports denying Defendants' motion for summary judgment due to genuine issues of material fact.

### C. Mandate Rule and Amending the Complaint

Defendants also argue that the mandate rule prevents the court from revisiting its denial of Clark's motion to amend his complaint because he did not raise this issue on appeal. (*See* Br. Supp. Mot. Dismiss at 12–13.) The court disagrees. For the reasons discussed below, the court will vacate the part of its March 2021 Order (ECF No. 113) that denied Clark's motion to amend his complaint and grant that motion for the discrete purpose of Clark conforming his complaint to his deposition testimony.[6]

#### 1. Mandate Rule

While the mandate rule generally forecloses the reconsideration of issues that were not appealed, a district court can reopen an issue if there was "a blatant error in [its] prior decision [that] will, if uncorrected, result in a serious injustice." *See Bell*, 5 F.3d at 67 (citation omitted). Moreover, when the Fourth Circuit "remands for further proceedings, a district court must . . . implement both the letter and spirit of the . . . mandate, taking into account [the Fourth Circuit's] opinion and the circumstances it embraces." *Id.* at 66 (cleaned up).

The Fourth Circuit's opinion in the present matter suggests that the court previously denying Clark leave to amend was a blatant error. As the Fourth Circuit stated, it "was error" for the court to grant summary judgment for Defendants on the ground that no evidence in the record besides Clark's deposition testimony created a genuine issue of material fact. *See Clark*, 2023 WL 4888837, at *1. The court's previous opinion relied on the same erroneous

---

[6] Clark did not raise the issue of amending his complaint again on remand, but the court, *sua sponte*, will grant him leave to do so to comport with the Fourth Circuit's well-established preference of resolving claims on the merits. *See e.g.*, *Pittston Co. v. United States*, 199 F.3d 694, 705 (4th Cir. 1999) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."); *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 633 (E.D. Va. 2011) (granting the plaintiff leave to amend her complaint *sua sponte*).

premise in denying Clark's request to amend his complaint, noting that an amendment would be futile because of the lack of other objective evidence to corroborate his deposition testimony. (2021 Mem. Op. at 23–24.) This leads to the logical conclusion that the denial was a serious error. It would not be futile for Clark to amend his complaint to conform it to his deposition testimony because that testimony creates a genuine issue of material fact—as identified and embraced by the Fourth Circuit on appeal—that is sufficient to survive summary judgment.

In addition to correcting its previous error, the court revisiting its denial of Clark's motion to amend will prevent him from suffering a serious injustice and align with the letter and spirit of the Fourth Circuit's opinion. Clark would suffer a serious injustice if the court did not reopen his motion to amend because failing to do so may foreclose him from recovering against Defendants for their allegedly serious assault. Reconsidering his motion to amend also effectuates the Fourth Circuit's implied—but nevertheless clear—bottom line that Clark's excessive-force claim against Defendants should proceed to a jury. *See Clark*, 2023 WL 4888837, at *1. Accordingly, an exception to the mandate rule applies here, and the court reexamines Clark's motion to amend his complaint.

### 2. Amending the Complaint

Federal Rule of Civil Procedure 15(a)(2) states that a court should freely give a party leave to amend its pleading when justice so requires. Indeed, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile." *Laber*,

438 F.3d at 426 (citation omitted). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Id.*

As discussed, permitting Clark to amend his complaint to conform to his deposition testimony would not be futile. The amendment also would not prejudice Defendants because it would not "raise[] a new legal theory that would require the gathering and analysis of facts not already considered by the defendant, and is [not] offered shortly before or during trial." *Id.* (cleaned up). Trial has not yet been set in this matter, and, far from raising a new legal theory, Clark's amendment simply would conform his complaint to his deposition testimony. *See Francisco*, 756 F. Supp. 2d at 717 (finding no prejudice where a party sought to "simply conform its pleading to facts which were revealed during discovery"). This minimal amendment should require Defendants to perform little, if any, additional fact gathering and would clearly set forth Clark's claims for trial. Additionally, Defendants would not be prejudiced because they have known the true nature of Clark's allegations from his deposition testimony for years and defended against them in their 2021 motion for summary judgment, on appeal, and in their instant motion. Finally, Clark is not acting in bad faith in seeking the amendment. Instead, as he stated when he made the request in 2021, the amendment is merely intended to clarify his allegations so that he can "move forward with his claims on the merits."[7] (ECF No. 99 at 3.)

---

[7] To be clear, this leave to amend is not *carte blanche* to add entirely new claims or legal theories based on existing evidence. In his response brief to Defendants' present motion, Clark appears to suggest that he now wishes to argue his excessive-force claim is based on Defendants' actions during the second hospital incident captured on body-camera video. (*See* Br. Opp'n Summ. J. at 14–15.) That position contradicts Clark's repeated statements throughout this matter that his excessive-force claim is not based on either of the events recorded on Defendants' body cameras. (*See, e.g.*, Clark Dep. 58:19–59:9; 2021 Hr'g Tr. 29:14–30:1; ECF No. 99 at 4; Appellant's Br. at 30.) Although the court commends Clark's new attorneys for their zealous advocacy, estoppel

Overall, the Fourth Circuit's ruling in this matter indicates that there is a genuine issue of material fact and Clark is entitled to his day in court. *See Clark*, 2023 WL 4888837, at *1. Embracing the letter and spirit of that ruling, the preference for resolving claims on the merits, and the Fourth Circuit's liberal amendment policy, the court will permit Clark to amend his complaint for the limited purpose of aligning it with his deposition testimony.

## IV.   CONCLUSION

For the foregoing reasons, the court will (1) deny Defendants' motion for summary judgment without prejudice, (2) vacate the part of its March 2021 Order that denied Clark's motion to amend, and (3) grant Clark leave to amend his complaint, consistent with this Memorandum Opinion.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 13th day of March, 2024.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

and prejudice to Defendants preclude Clark from asserting that new legal theory at this stage. *See, e.g.*, *Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc.*, 546 F. Supp. 3d 440, 449 (M.D.N.C. 2021) (citing *Guinness PLC v. Ward*, 955 F.2d 875, 899 (4th Cir. 1992)) ("'[J]udicial estoppel . . . protects the integrity of the courts by precluding parties from adopting inconsistent positions in the course of a judicial proceeding.'"); *Pine Mountain Oil & Gas, Inc. v. Equitable Prod. Co.*, 446 F. Supp. 2d 643, 649–51 (W.D. Va. 2006) (citing *Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502, 506 (4th Cir. 1992)) (denying the plaintiff's motion to amend its complaint to assert new theories, which were available when the plaintiff initially filed suit five months earlier, in part, because the amendment would prejudice the defendant). Accordingly, the court grants Clark leave to amend his complaint only to conform it to his deposition testimony. *Cf.* 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1486 (3d ed. 2023) ("[T]he court may use its discretion to impose conditions on the allowance of a proposed amendment as an appropriate means of balancing the interests of the party seeking the amendment and those of the party objecting to it.").